UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA WILLIAMS, | ] |
| Plaintiff, | ] |
| v. | ] |
| | ] CV-02-BE-296-S |
| MICHAEL W. HALEY, et al., | ] |
| Defendants. | ] |

FILED
04 FEB 18 AM 10: 25
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
FEB 18 2004

## MEMORANDUM OPINION

This case comes before the court on the defendants' Motion for Summary Judgment (Doc. 33). This is a sexual harassment case brought under Title VII and Alabama state law. The plaintiff, Patricia Williams ("Williams") claims the terms and conditions of her employment as a prison guard were altered because her co-workers and supervisors failed to enforce prison rules forbidding "indecent exposures" by inmates. Two counts are proffered by the complaint: (1) a Title VII "hostile work environment" harassment count, and (2) a constructive discharge count. Having reviewed the briefs and evidentiary submissions submitted by the parties on this motion, the court hereby GRANTS the defendants' motion in its entirety for the reasons discussed below.

### I. Procedural Matters

The complaint only names one plaintiff, Williams, who allegedly appears both individually and as a class representative. Since the complaint, however, no motion for class certification has been filed with the court. On April 2, 2002, Williams filed a motion to amend her complaint (Doc. 7), adding as plaintiffs Toni Crenshaw, Linda Miller, and Reflesia Mostella.

53

On April 15, 2002, the court granted the motion (Doc. 12). **The plaintiffs have yet to serve on the defendants, or file with this court, an amended complaint reflecting this April 2002 order.** In her responsive brief, the plaintiff again mentions Crenshaw, Miller, and Mostella. In their reply brief, the defendants object to the inclusion of these three individuals as plaintiffs, citing Fed. R. Civ. P. 15. The court agrees with the defendants. "The propriety of allowing a pleading alteration depends not only on the state of affairs prior to amendment but also on what happens afterwards. Accordingly, Rule 15 both conveys the circumstances under which leave to amend shall be granted and directs how the litigation will move forward following an amendment...Thus, Rule 15 assumes an amended pleading will be filed and anticipates service of that pleading on the adverse party." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466-67 (2000).

Discovery closed in this case in March 2003; the dispositive motion deadline in this case was April 3, 2003. The plaintiff had almost a year in which to file her amended pleading, but did not do so. It is hardly fair to ask the defendants to defend claims they have not been notified of by the proper pleadings. Thus, the court now VACATES its Order of April 15, 2003 allowing the plaintiff to amend her complaint.

Two defendants are named in the case: Michael Haley, the former Commissioner of the Alabama Department of Corrections ("ALDOC"), who should appropriately be substituted now by Donal Campbell, the current Commissioner of ALDOC, and ALDOC as an entity. The defendants ask the court in their summary judgment brief to dismiss the claims against Campbell as a matter of law. The Commissioner is named in his official capacity. The liability of a Title VII claim belongs to the agency, and as ALDOC is already a named defendant, the defendants argue, the Commissioner should be dismissed as a duplicative party. *See Kelley v. Troy State*

*Univ.*, 923 F.Supp. 1494 (M.D. Ala. 1996), *Blalock v. Dale Co. Bd. of Educ.*, 33 F. Supp. 2d 995 (M.D. Ala. 1998). The plaintiffs do not contest this in their response brief. The court agrees with the defendants, and DISMISSES the Commissioner in his official capacity with prejudice.

## II. Facts

Williams was hired by ALDOC in November 1987. At first, Williams was assigned to Limestone Correctional Facility, a medium security prison. After eight months, she requested an assignment to St. Clair Correctional Facility ("St. Clair"), a maximum security prison, to be closer to her husband, also a corrections officer. While at St. Clair, Williams observed inmates masturbating "a lot", "twice a week probably." Williams does not know why inmates did this in front of staff members, but admits that a prison is inherently "a dangerous place and a hostile environment." There are no prison rules against masturbation, but there is such a rule–Rule 38–against indecent exposure. The warden of St. Clair, Ralph Hooks, concedes that this is a problem for female guards almost exclusively, and that such behavior around male guards is rare.

When she observed this behavior, Williams would talk to the offending inmate to let him know his behavior was against prison rules. Williams admits even this measure was difficult at times; the inmates often gave false identities, and/or covered their faces with towels while they exposed themselves. Sometimes, if the inmate stopped the behavior, no further action was taken. If they would not stop, and Williams could ascertain who the inmate was, Williams would then tell her supervisor about the incident, and wait for his instructions. If Williams' supervisor told her to write a "disciplinary" on the inmate, she would; if the supervisor told her not to, she wouldn't. Williams said she sometimes "had a problem with that [not writing up the inmate], but

they were my supervisor." Williams cannot remember the name of any supervisor who gave her an instruction not to write a disciplinary, however, and never filed a grievance with ALDOC about a supervisor instructing her not to write a disciplinary for an inmate. In 1997, Williams herself was promoted to Correctional Officer II, a supervisory position.

While the results of a disciplinary hearing could be very serious, resulting in a loss of privileges and placement in segregated housing, the problem of inmate masturbation was a chronic and difficult one. Williams remarked that there was "constantly masturbation going on," and admitted that "there's very little you–there's nothing I could do. I mean, if you can't identify [the inmate], then there's nothing [you] can do." Williams mentioned that prison policy allowed inmates to do what they wanted in their beds; it was "their area" and if the inmate exposed himself, there was nothing she could do. As a result, not even Williams enforced Rule 38 every time she came across a violation.

Williams' disgust with the situation caused some of the other male officers to tease her. Many of them saw the enforcement of Rule 38 as "pointless," explaining that all the inmates had to do to evade the rule was to "put a sock over it." Several officers made jokes referring to the inmates' propensity for this behavior around Williams. Williams explained that "it's just a common thing to be saying stuff like that." Williams felt her co-workers created a hostile work environment by "putting all of the responsibility of writing the inmate up on me" because they didn't enforce Rule 38 themselves, even when they knew the behavior was going on. (Williams cites statistics to support this claim.) Williams also felt it was "wrong" to assign her to the "exhibitionist" inmate dorm. However, Williams never filed a grievance with ALDOC about any of these situations.

Williams believes that every inmate who violates Rule 38 should be put in segregated housing, and should be given counseling. When pressed about the shortage of segregated housing, Williams agreed that sometimes, a disciplinary is the only measure that could be taken.

Williams had significant training during her time at ALDOC. Over the years, this training included sessions on cross-gender supervision and sexual harassment. The sexual harassment training included information about the employee grievance system. Williams knew "you can report situations that you don't care about to a supervisor, whichever one you feel comfortable with"; she knew where to go if she wanted to see a certain prison regulation; and she admitted all of the regulations and policies were posted on bulletin boards at the prison.

On April 8, 2000, Williams was transferred from St. Clair Correctional Facility to the Birmingham Work Release Center, a program exclusively for female inmates. Williams believed this transfer was made in response to her informal complaints about the working conditions at the St. Clair facility. The Birmingham facility houses 200-300 female inmates; during her time there, she never observed a female inmate masturbating. Williams reasons Rule 38 was enforced strictly at this facility "because [masturbation is] a behavior that I had not observed since I've been there." In April 2001, ALDOC notified Williams that she was going to be transferred back to the St. Clair prison. Unwilling to work at St. Clair again, Williams resigned from ALDOC on April 20, 2001.

On April 23, 2001, Williams filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The only allegation from the charge that survives in this lawsuit is for "hostile work environment" sexual harassment. Additionally, the plaintiff alleges she was constructively discharged from ALDOC.

### III. Argument

*A. Williams' Untimely EEOC Charge*

Title VII requires that any discrimination charge filed with the EEOC "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e) (1998).  Failing to file a timely EEOC charge can impose fatal consequences to a plaintiff's civil suit.  "A discriminatory act which is not made the basis for a timely [EEOC] charge is the legal equivalent of a discriminatory act which occurred before [Title VII] was passed.  It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines v. Evans*, 432 U.S. 553, 558 (1977).  Thus, the court should review what, if any, discriminatory acts Williams alleged to have occurred within the applicable time period subject to Williams' EEOC charge.  The court finds this time period stretches from October 26, 2000 to April 23, 2001.

On October 26, 2000, Williams was employed by ALDOC at the Birmingham Work Release Center.  Williams worked at this location until she resigned from ALDOC on April 20, 2001.  Williams does not allege in any of her filings with the court that she was discriminated against at the Birmingham Work Release Center.  To the contrary, the plaintiff alleges ALDOC policies regarding the "indecent exposure" of inmates were strictly followed at the Birmingham Work Release Center.  Because the plaintiff has failed to allege any discriminatory acts within 180 days of her EEOC charge, the court has no choice but to grant summary judgment for the defendants on Williams' Title VII claim.

*B. Williams' Hostile Work Environment Claim*

Even if the plaintiff could incorporate every alleged act of discrimination she underwent as an employee of ALDOC, the court would still dismiss the plaintiff's Title VII claims as a matter of law. To establish a hostile work environment claim, a plaintiff must show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999).

First, it is important to note that prisons are not typical places of employment. Inmates are not agents or servants of a prison, and thus their behavior cannot attach liability to a prison like a co-employee or supervisor might.[1] *See Slayton v. Ohio Dept. of Youth Serv.,* 206 F.3d 669 (6th Cir. 2000). As a result, it is difficult to apply the traditional "hostile work environment" analysis to offensive behavior originating from inmates. While there is scant case law on point, a few courts have articulated some basic standards for inmate harassment liability which this court acknowledges and adopts. The "general rule against prison liability for inmate conduct does not apply when the institution fails to take appropriate steps to remedy or prevent illegal inmate behavior." *Id.* at 677. Given the taxing demands of prison operation, all courts can "expect and require prisons to do is to implement and enforce policies reasonably calculated to minimize

---

[1] The plaintiff argues in her brief that ALDOC's inaction should be enough to impose liability, but it cites no authority for this argument, especially in the prison context, where the defendant's alleged inaction is vis-a-vis inmates who are not agents of the defendant.

7

[inmate] harassment and protect the safety of its employees." *Powell v. Morris*, 37 F. Supp. 2d 1011 (S.D. Ohio, 1999), *see also Waymire v. Harris Co., Tex.,* 86 F.3d 424, 428-29 (5th Cir. 1996) (holding that because prison took prompt remedial action, jailer did not establish a hostile environment where a fellow jailer circulated a sexually offensive inmate drawing), *cf. L.W. v. Grubbs*, 974 F.2d 119, 122 (9th Cir. 1992) (holding that where prison "independently created the opportunity for and facilitated" an inmate's assault of a prison employee, it was subject to § 1983 liability).

The court is confident that ALDOC has reached this threshold. The court is particularly persuaded by U.S. Magistrate Judge Cassady's opinion in *Hicks v. Alabama*, 45 F. Supp. 2d 921 (S.D. Ala. 1998), finding that the disciplinary system installed by ALDOC for dealing with indecent exposure by inmates was a reasonable and appropriate response to a pervasive and difficult problem. While ALDOC did not enforce Rule 38 with the urgency that Williams might have preferred, this court is not prepared to act as a super-correctional warden and second-guess the defendants' decisions on how they might use their extremely limited resources. Nor is the court prepared to find, based on the facts in front of it, that ALDOC personnel encouraged or facilitated violations of Rule 38. Thus, because the plaintiff has failed to prove that ALDOC or its agents were responsible for the alleged hostile work environment, the court cannot hold ALDOC liable.

Second, Williams has not alleged that ALDOC's failure to "strictly enforce" the rule against indecent exposure was done *on the basis of Williams' sex*. No evidence indicates that ALDOC treated "disciplinaries" written by male correctional officers any differently than those written by female correctional officers, or that stricter disciplinary measures were rejected in an

effort to antagonize women. Because she has not proven that the behavior taken towards her by ALDOC personnel was done on the basis of her sex, Williams cannot establish a *prima facie* claim for "hostile work environment" sexual harassment.

Finally, even if Williams could establish a valid *prima facie* case, the defendants should be able to avail themselves of the affirmative defense articulated in *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) and *Burlington Industries Inc. v. Ellerth,* 524 U.S. 742 (1998). Under *Faragher* and *Ellerth*, an employer is not liable for the hostile work environment created by one of its agents if the employer proves: (1) that it exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by the employer to avoid the harm or otherwise failed to avoid the harm. *Ellerth,* 524 U.S. at 765.

Even though ALDOC had a posted sexual harassment policy that Williams was aware of, and had been trained in[2], Williams never filed a grievance with her employer about its alleged nonresponsiveness to the inmates' exposures. The *Faragher/Ellerth* affirmative defense developed so employers would first have a chance to remedy harassment before being sued over it. Because Williams never utilized the valid reporting mechanisms available to her, her sexual harassment claim must fail as a matter of law.

For all the reasons discussed above, summary judgment is granted for the defendant on the plaintiff's Title VII claims. As the court has disposed of all claims over which it had original jurisdiction, it sees no reason to extend supplemental jurisdiction over Williams' state law

---

[2] If an employer has effectively promulgated a workable anti-harassment policy, then it has met its burden under the first element of the *Faragher/Ellerth* defense. *See Faragher,* 524 U.S. at 765; *Madray v. Publix Supermarkets, Inc.,* 208 F.3d 1290 (11th Cir. 2000), *cert. denied,* 531 U.S. 926 (2000).

constructive discharge count. 28 U.S.C. § 1367.

## III. Conclusion

By separate order, Toni Crenshaw, Linda Miller, and Reflesia Mostella will be dismissed from the case; the Commissioner of the Alabama Department of Corrections will be dismissed; and the defendant's motion for summary judgment will be granted.

DONE and ORDERED this 18th day of February, 2004.

```
                                    _____
                                    KARON OWEN BOWDRE
                                    UNITED STATES DISTRICT JUDGE
```